In the court of the fifth case, Perry v. Coles County. Mr. Cardell? May it please the court, our jurisdictional claim is based on two facts. First, the Coles County 2015 resolution found in appendix 35-36 for four year sequencing of the new assessments to replace the pre-2002 assessments during the four year period creates an inadvertent unconstitutional equivalent of a credit to property owners outside of Mattoon Township in violation of the Equal Protection Clause. Coles County is a serial violator of state assessment law. Coles County did not assess the commercial industrial properties in the county in even numbered years 2002, 2006, 8, 10, 12, 16, and 18. To fix it in 2015, Coles County violated state assessment law again because it was required in 2016 and 2018 to do all the assessments of the commercial industrial properties. It did not. Rather, it sequenced them in Mattoon Township in 2016 and then the others in 2017, 2018, and 2019. So the pre-2002 assessment values have long legally expired. They serve as a plug number, or essentially a credit, to those property owners that are in Mattoon Township. In some ways, this claim is very much overripe. The exceptions to the Comity Doctrine and the Tax Injunction Act, 28 U.S.C. 1341, apply because there's no adequate, complete state court remedy for Coles County's serial violations of state assessment law. I don't think anyone ever contemplated in the Illinois Supreme Court that a county would ever do this. When you refer to serial, you mean that's some sort of an intentional displacement of when they should have had the assessment. So a lot of people weren't taxed over a long period of time, and then they stuck it, I guess the way I understand it, just one industrial area in one year and didn't affect anybody else. You think they should have taxed everybody's assessment at the same time, I presume. As the law required in 2016 and 2018 and the years previous. And so the point is, apparently the person wasn't qualified to supervise your assessments to do the job. And so for whatever reason, it wasn't done for all these years. And so what do we do when we have a serial violate of the law? And so my point is, is there even an adequate, complete remedy in state court for this? And so when the property appeal comes, we had over 160 appeals in 2016, and we have two townships, an extraordinary number. There isn't a remedy to address getting the assessments done outside the township. Who decides those appeals? Well, ultimately it's property tax appeal board, and then ultimately the circuit court. But the Millennium Park case states, the Illinois Supreme Court case, no equity relief for procedural irregularities. So it's a very circumscribed procedure, and the only remedy is reducing the property owner's assessed value. And so the quote is in the brief, so I won't bother with that. The further concern on the Tax Injunction Act is the U.S. Supreme Court in Levin stated, at 560 U.S. 540, a 2010 case, that Hibbs, the earlier case, said that Hibbs does not preclude federal challenge by a third party to a credit received by another. So my pre-2002 assessments being used all the way here in 2017, 2018, now they're saying they're going to continue to use it until 2019 in some townships, but basically effectively it's a credit. And the reasoning behind that decision exempting that under the Tax Injunction Act is because the court would end up increasing the revenue of the state. So this is a big chunk of federal jurisdiction that any plaintiff can come in this court and challenge a credit. Well, of course you can, based on marital status, sex, gender, right? And so our point is, why is this credit any different? I mean, basically it's a plug number because we have a serial violator of the law. So similarly, we think that the Comedy Doctrine does not preclude a federal challenge by a third party to the equivalent of a credit received by others. And we think the court should look at that. Now, with respect to the Comedy Doctrine, it can't be the filing of a federal lawsuit that's the problem. That doesn't harm the state. It can't be the federal judges themselves. They're good people, right? What it is is the interference with the administration of state law. And judges cause county by being a serial violator of law a long time ago left that safe harbor. It's actually the interference with the stream of revenue to state and local governments. That's what the Tax Injunction Act and the Comedy Doctrine are aimed at, prohibiting federal courts from stepping in with equitable remedies, declaratory judgment, injunctions, et cetera, that interrupt the stream of state revenue or local revenue. And that's precisely what you're asking for here in terms of your remedial request. You're asking for injunctive remedies that will interrupt the assessments of property tax until they're done in accordance with the way you think they ought to be done. In other words, no assessment under the new standard until the entire county is assessed, as I understand the claim. Yes, the difference here, of course, is the resolution on its face says that the quadrants will be done in 2016, 17, 18, and 19, and the state law requires them to be done in 16. Right, but you're expressly requesting a federal court to step in and interfere with the flow of tax revenues, which is exactly what the TIA prohibits and the Comedy Doctrine. The injunction is completely consistent with the state law requirements on Coles County. It doesn't matter, then you've got to go to state court for it. Unless the revenues are increased. And so that was my point about the credit, is that when you get rid of the plug number, the revenues will increase as they did in Mattoon Township. So the Comedy Doctrine and the Tax Injunction Act don't apply in these two conditions. One is the injunction is completely consistent with state law, reflecting that Coles County left the safe harbor of administering state law. And two, if the revenues are increased. There's no harm to Coles County when this court requires them to follow the Equal Objection Clause by following the equivalent of state law requiring assessments every two years. You're asking for an injunction that prohibits Coles County from increasing your clients' taxes until the reassessments are done for everybody, right? No. That's how I read your proof of relief. Correct. As master of the complaint under City of Shelby, which is the Iqbal Twombly component, my job is to marshal the facts. And then the federal coordinates experience basically is there to assist in identifying... What are you asking for? Asking for an injunction so that Coles County will complete the assessments as soon as possible so that the credit that the other... An injunction that a public official or a public entity obey the law is impermissible. What specifically are you asking us to order Coles County to do for your client? Well, they stop using the plug numbers. The pre-2002 assessed values are legally expired under state law. They're so old and antiquated, and they're so unfair, they create an equal protection violation for those in Mattoon Township. So they can't collect any taxes from you pursuant to that procedure? Well, the numbers are 20 years old. Is the assessor elected? I believe he's appointed. By whom? By the county. County council? The county board. The county board? I'm just looking for some kind of... Whatever the political problem is, because that's what it is. Well, I see my... You can answer that. Yeah, I think there are political methods, but ultimately, as Associate Justice Brandeis said, if we want respect for the rule of law, we need to treat the law respectfully. And when a county goes rogue on following state assessment law, and the federal court is here and it can entertain a class action to address it, I think it should. What is it about the Property Tax Appeal Board's limitations that can't address the remedy you seek? First, the complaint remedies are limited to decreasing the assessed value. Two, class actions are allowed. Three, the Illinois Supreme Court said that they don't allow equitable relief from these proceedings for procedural irregularities. Is that what you say we have here, a procedural irregularity? Yes. No equitable relief, yes, for this type of procedural irregularity. So it seems like, like Brandeis was saying, I understand the court has said the Seventh Circuit, as that case, is applying the rule, but just because you apply the rule doesn't mean you don't have to apply the exception. Thank you. Thank you, Mr. Cardone. Mr. Unrath. Thank you, Your Honors. My name is Craig Unrath. I represent Coles County. Judge Fulmer, I'd like to respond to your last question here. What is it about the state court remedies? Why are they prohibited from addressing a case based in equity? Now, he cited the Millennial Park v. Houlihan, and they have a single sentence in there where they said that equity is not available to resolve claims alleging procedural errors. Well, that's precisely what they argued. And I thought, well, but when you look at the case as a whole, it has no relevance to this case at all. So I looked at the authority that the Houlihan case cited, and they cited the Lackey case, one of their prior decisions. You read the Lackey decision, and it makes it clear that there's a very good reason why you cannot raise equitable claims for procedural errors. And the reason is, like all claims in equity, you can't do it if you have an adequate remedy at law. And that's what the Lackey decision holds. Now, there are exceptions to that rule. If the tax is unauthorized by law, or if it's levied upon exempt property, even if you do have an adequate remedy of law, you can still raise your claims for equitable relief. So what I'm getting at here is this, is that the determination of whether Illinois procedures for appealing property tax assessments is focused on whether the state court remedy meets certain minimal procedural criteria. That criteria is laid out in the McNary decision. It must be plain, adequate, and complete. Now, this court has issued, I believe, about a half a dozen rulings where you've upheld the proposition that Illinois procedures are adequate, complete, that he can raise every constitutional claim he has within the state court and repeal that all the way to the Illinois Supreme Court and then on to the U.S. Supreme Court. Now, another interesting aspect about this is the Levin Court looked at this. They said, you know, this is really important, that they go from the Illinois Supreme Court to the U.S. Supreme Court, and if the U.S. Supreme Court finds that the procedure violated the Constitution, then the U.S. Supreme Court can remand to the Illinois Supreme Court and order that court to fix it. That's not something a district court can do. A district court, and even this court, cannot remand the case to the Illinois Supreme Court. It reaches a dead end. This is just one more reason why this case cannot be addressed in federal court. Now, this case is the poster child for the doctrine of comedy. Before we get to that, why isn't this barred jurisdictionally by the Tax Injunction Act? The doctrine of comedy is more inclusive than the Tax Injunction Act. But the Tax Injunction Act is a jurisdictional principle, so it comes first, right? Actually, the district court disagreed with that, and the court noted that in every case where both doctrines were, or the statute and the doctrine were at issue, the courts will usually go for comedy because it is more inclusive. And, yes, I think the Tax Injunction Act clearly prohibits the type of action in this case. Now, comedy and the fair assessment within approach is abstention. The Tax Injunction Act is jurisdictional. And if the federal courts have no power to step in here, why would we consider an abstention issue first instead of the jurisdictional issue? That's a very good question, Your Honor. All I know is that many courts have done so. Oh, that's certainly true. Now, why they do that, I just have to assume that it's more inclusive. And I'd have to adopt the district court's approach. One thing that got me about this is you look through the Supreme Court precedent on this and look at the Matthews decision. That goes back to the 1930s, although the case law traces back to the 1870s, 150 years of case law on addressing the comedy doctrine. But in the 1930s, the Matthews decision said that federal courts should act with scrupulous regard for the rightful independence of state government and act with a proper reluctance to interfere by injunction with their fiscal operations. Yeah, but see, that's my question earlier. Who appoints, who is elected? Where do the people who are taxed, what is their remedy? Is there a vote somewhere that these kind of people can be displaced? Yes, their remedy is through the Board of Review and then the, oh, and I'm getting my... Somewhere along the line, there's a, you know, it's like you say, they said the county. Well, there's county commissioners. They are elected. There's an auditor. I just, that's, some places, you know, you just can't win. I don't know if I agree with that, Your Honor. You take this initially before the tax board, and if you don't get the relief you want, you go to the Board of Review, and if you still don't get the relief you want, you go to the circuit court, state appellate court. I want to know who the board, somebody along there, an assessor is usually elected. I agree. Well, then vote somebody else in. There's another potential. No, I'm serious. I'm not joking. It seems that if there's a remedy, then the people have a right to complain to whomever is elected and is in charge of doing the assessing. I agree, and they would take that complaint to the tax review board, and that is where the complainant can directly confront the tax assessor. Okay. Whoever it is, you know, a board, boards are usually appointed. Right. So somebody along the line elects them, county commissioners maybe. I don't know. Look, that's a sidetrack, but it does seem to me that this is, when we talk about comedy, it also includes how things are resolved at the local level and for the people who are affected, which is every homeowner. Absolutely, Your Honor, and if they don't get the relief they want, they can take this all the way to the United States Supreme Court. I know, I know, but I just want to know, what do they do the next election day? They can do that too, but you never know who's going to get it. Of course not. I don't know that that's within their control. It is within the majority's control. I would agree with that. The guiding principle behind this entire dispute is that as long as Illinois has the procedures in place that will provide a plain, adequate, and complete remedy, they can do that. Now, counsel raised in their reply brief a point, and they said, well, what about class actions under Section 23-15 of the code? I believe it states that class action suits aren't allowed. Well, it all ends up in the courts. Yeah, well, the last case. As these folks know, I just met one term in the state senate, and sometimes that's a place where they resolve what kind of a law you have. But those are elected people. But it's a slow process. Of course it is. This has been 20 years. If I could just finish my point about class actions, the Lackey decision addresses that. They state that even if you end up with a multitude of suits, these people can join in your action, and that's in paragraph page 80 of that case. My time is up almost. I see. If there are no further questions, we urge the court to affirm the dismissal of this case. Thank you, Mr. Unruh. Thank you. Mr. Cardale, your time has expired, but you may have the two minutes for a vote. Thank you, Your Honor. So, again, we plead to the court to apply, to look at the exceptions to the Tax Injunction Act and the exception to the Comey Doctrine. If there's not a plain and adequate and complete remedy, then the federal court has jurisdiction. With respect to that, I heard about Millennium Park. There is a sentence saying no equitable relief is provided for procedural irregularities. How will the court deal with that sentence? Certainly as a representative of these taxpayers, I read it and said, oh, there's no adequate remedy in circuit court. With respect to no class action complaints, I read the statute and said no class action complaints. We want to file a class action complaint. Roswell v. LaSalle National Bank, a U.S. Supreme Court case, 450 U.S. 503-517-1981, in a moment of sort of, I think, judicial transparency, we permitted federal jurisdiction when the taxpayer state court remedy would require a multiplicity of suits. So the idea being, are you really going to send back these Mattoon Township property owners to file individual lawsuits that then can be joined? It's very expensive. It's costly. So if the court is on the edge there, then you ought to go with what the U.S. Supreme Court suggested in that decision. So again, the three points, 35 Illinois Statutes 223-15, your appeal to the circuit court is limited to the legal relief of reduced assessment. There are no class action complaints. That's complete relief for this individual taxpayer. The exception to the TIA and the Comity Doctrine doesn't require class action availability in state court. That would completely defeat the purpose of the Tax Injunction Act and the Comity Doctrine. What the exception focuses on is whether this taxpayer can get complete relief, adequate relief in state court. And we've squarely held in the Capra case that Illinois provides such remedies. Right. And I explained in your argument, our briefs, that here we have a serial violator of the law and the injunction. This taxpayer can get relief for his overpayment through state remedies, and that's what the exception to the Tax Injunction Act and the Comity Doctrine focuses on. All right. With the exception, if I may, may I respond? Yes. Okay. The exception that we noted was that there's a huge amount of federal jurisdiction out there regarding challenging the federal challenges to local government credits. They can be challenged under the Equal Protection Clause for race, gender, all sorts of things. And this one is with respect to geography. So the plug numbers used from 20 years ago have resulted in effectively a credit to the property owners outside of the township, meaning that the Tax Injunction Act and with respect to the Comity Doctrine, that these facts meet the exception. Thank you. All right. Thank you. Thanks to both counsel. The case is taken under advisement. The court will proceed.